IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

REGINALD BILLINGSLEA,  :
         :
 Plaintiff,     :
         :  No. 5:13-cv-16 (CAR)
 v.        :
         :
GRAPHIC PACKAGING  :
INTERNATIONAL, INC.,  :
         :
 Defendant.    :
_____ :

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Reginald Billingslea brings this employment discrimination action contending his former employer, Defendant Graphic Packaging International, Inc., discharged him based on his race in violation of 42 U.S.C. § 1981.  Before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment.   After fully considering the matter, the Court **DENIES** Plaintiff's Motion for Extension of Time to respond to Defendant's Motion for Summary Judgment [Doc. 34], and **GRANTS** Defendant's Motion for Summary Judgment [Doc. 27].

1

**MOTION FOR EXTENSION OF TIME**

In what has become routine practice in this case—indeed in this Court and throughout this district—Plaintiff's counsel seeks yet another extension of time to file a response to a motion filed by Defendant.[1]  Counsel now requests a 21 day extension of time to respond to Defendant's Motion for Summary Judgment due to his involvement as lead counsel in a major criminal trial in the Superior Court of Brooks County, Georgia.  However, in accordance with its prior warning, the Court will no longer tolerate counsel's delay tactics in this case.

Defendant timely filed its summary judgment Motion on July 30, 2014.  Thus, Plaintiff's response was due on August 25, 2014.  On Saturday, August 23rd, Plaintiff's counsel emailed this Court's Clerk's office a letter confirming a 14 day extension of time to file his response brief pursuant to Local Rule 6.2.  Early Monday morning on August 25th at 9:00 am, the Clerk's office responded to counsel's email informing him that the "confirmation must be filed electronically using the 'Letter' event."  Counsel, however, failed to correctly file his request.  Instead, the next day, on August 26 at 10:11 am, Plaintiff's counsel again emailed the same letter confirming an extension of time to the Clerk's office.  Two minutes later, at 10:13 am, the Clerk's office specifically instructed

---

[1] Plaintiff's counsel has a long history of failing to abide by deadlines imposed by the judges in this district.

2

counsel that the letter "must be filed electronically in CM/ECF," the Court's electronic filing system.   Ignoring the Clerk's directive, Plaintiff's counsel again failed to electronically file the letter on CM/ECF.   On September 4, 2014, ten days after the response was due, Plaintiff's counsel filed the current Motion seeking a 21 day extension of time to file his response.

This case has been replete with Plaintiff's counsel's failure to abide by the deadlines imposed by this Court.   Defendant removed this case on January 14, 2013, and filed a motion to dismiss the next day.   Plaintiff's counsel failed to timely respond to the motion.   A week after the response was due, Plaintiff's counsel requested leave to file an out-of-time response, citing his secretary's inadvertent failure to enter the correct due date on his calendar.   The Court granted Plaintiff's request and ordered Plaintiff to file his response by March 5, 2013.   Plaintiff failed to abide by the Court's deadline and filed no response.   Instead, 10 days after the response was due, Plaintiff filed a motion to amend the Complaint.   The Court granted Defendant's motion to dismiss Plaintiff's Title VII claim and at the same time granted Plaintiff's motion to amend the Complaint. Thereafter, Defendant filed a second motion to dismiss.

Again, Plaintiff's counsel failed to timely respond to Defendant's motion to dismiss.  When Plaintiff's counsel filed his response two weeks late, he attached a letter

purporting to memorialize a conversation between his secretary and a deputy clerk of this Court, wherein counsel stated that, in accordance with Local Rule 6.2, the clerk granted him a 14 day extension to respond to the motion. Although an extension was never entered on the record, the Court accepted counsel's explanation and considered his response in granting in part and denying in part Defendant's second motion to dismiss.[2]  In its Order, the Court directed the parties to file their joint proposed scheduling and discovery order no later than September 26, 2013.

Yet again, Plaintiff's counsel failed to comply with the Court's deadline, filing a unilateral proposed order three days late, on September 30, 2013. As a result, the Court ordered the parties to show cause why sanctions should not be imposed for failing to abide by the Court's deadlines. In its Order, the Court expressed its impatience with Plaintiff's counsel's delay tactics and failures to abide by the Court's deadlines: "Until this point, the Court has tolerated Plaintiff's counsel's tardiness in responding to motions and abiding by the Court's deadlines. However, the Court's patience has run."[3]  At the hearing, the Court addressed Plaintiff's counsel and admonished him for his tardiness but did not impose sanctions.

---

[2] The Court dismissed Plaintiff's claim for remedies under Title VII and Plaintiff's section 1981 retaliation claim and allowed Plaintiff's section 1981 discrimination claim to go forward.
[3] Order to Show Cause, p. 3, Doc. 22.

Thereafter, the Court entered a discovery order setting a deadline of May 1, 2014, for discovery to end.  Plaintiff's counsel requested a 45 day extension to take three additional depositions which, over Defendant's objections, the Court granted. Discovery closed on June 15, 2014. Defendant filed its summary judgment Motion on July 30, 2014, and Plaintiff's response was due on August 25, 2014.

Before expiration of the response deadline, Plaintiff's counsel once again attempted to receive a 14 day extension from the Clerk pursuant to Local Rule 6.2. Yet, despite having previously failed to properly secure this same type of extension when responding to Defendant's motion to dismiss, and despite having received two emails from the Clerk's office informing counsel that he must file the extension on the docket in the Court's electronic filing system, counsel still failed to properly file the extension. Now, Plaintiff's counsel requests yet another extension of time to file a response to Defendant's motion.

This Court has been more than generous in allowing Plaintiff's counsel to file out of time responses.  However, as it warned in its previous order, the Court will no longer tolerate counsel's tardiness in responding to motions and his failure to abide by the Court's deadlines.  "In the courts, there is room for only so much lenity.  The district court must consider the equities not only to plaintiff and his counsel, but also to the

opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket.  Counsel must take responsibility for the obligations to which he committed and get the work done by the deadline."[4]  The Court will not allow Plaintiff's counsel to continue delaying the resolution of this case.  Thus, the request to file an out-of-time response to Defendant's Motion for Summary Judgment is **DENIED**.

## MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[6]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[7]  When ruling on a motion for summary judgment, the court must view the facts in the light

---

[4] *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004).
[5] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[7] *See id.* at 249-52.

6

most favorable to the party opposing the motion.[8]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[9]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[10]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[11]  If the adverse party does not so respond, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[12]

A district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.[13]  The district court need not *sua sponte* review all of the evidentiary materials on file at the

---

[8] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[9] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

[10] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[11] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[12] Fed. R. Civ. P. 56(a).

[13] *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials and must review all of the evidentiary materials submitted in support of the motion for summary judgment.[14]   The district court's order granting summary judgment must indicate that the merits of the motion were addressed.[15]

## BACKGROUND

Plaintiff, an African American male, claims Defendant terminated his employment based on his race, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.  Defendant, however, contends it terminated Plaintiff for violations of its attendance policy.

Defendant hired Plaintiff in July 2005, as a roll tender.  A few months later, Defendant promoted him to gluer operator, the position Plaintiff held until his termination on January 23, 2009.  Throughout his employment, Plaintiff received high marks for his performance.   In 2005 and 2006, Plaintiff's overall performance was graded "Fully Successful," although in 2006 it was noted that Plaintiff's attendance needed improvement.   In 2007, Plaintiff's overall performance was graded "Above Expectations," and Plaintiff received a pay raise of 7.5% in 2008.

Defendant's Attendance Policy

---

[14] *Id*. at 1101–02.
[15] *Id*. at 1102.

Defendant maintains a no-fault attendance policy that applies to non-exempt employees like Plaintiff.  Pursuant to the policy, Defendant will excuse an employee's absence if the employee fulfills three requirements, regardless of the circumstances for the absence: (1) he must notify his shift supervisor; (2) he must notify the automated reporting system, EZ-Labor; and (3) he must arrange for another employee to cover his shift.  If an employee fails to do any one of these three requirements, the absence is considered unexcused.  If an employee fails to complete all three requirements, the absence is considered a "no call no show."

Employees accumulate points, known as "occurrences," for every violation of the attendance policy, regardless of the reason.  Employees are assessed one occurrence for each unexcused absence or no call no show, .33 of an occurrence for every tardy (one occurrence for every three tardies), and .5 of an occurrence for clocking out early, depending on the length of the shift worked.  The employee accumulates only one occurrence, however, when there is a series of absences covered by a doctor's excuse.

The attendance policy provides for progressive discipline.  The accumulation of three occurrences results in a verbal warning; four occurrences results in a written warning; five occurrences results in a Last Chance Agreement; and six occurrences subjects the employee to termination.  An employee who receives two "no call no

shows" is subject to immediate termination.   The policy also contains a redemption provision wherein every three months Defendant will deduct .5 of an occurrence from the employee's records if he does not receive an additional occurrence.   Last Chance Agreements, however, remain on an employee's record indefinitely.

Plaintiff's Attendance Policy Violations

Plaintiff has a history of violating the attendance policy.   By October 11, 2006, Plaintiff had accumulated 5.32 occurrences and thus, pursuant to the policy, signed a Last Chance Agreement.   Plaintiff's attendance, however, improved after receiving the Last Chance Agreement, and in 2007 he did not receive any disciplinary actions for violations of the attendance policy.   Thus, his 2006 occurrences dropped off his record.

By July 22, 2008, however, Plaintiff had accumulated 4.33 occurrences and was given a written warning.   A week after receiving the written warning, Plaintiff missed two days of work on July 29 and 30.   Plaintiff failed to complete all three responsibilities under the policy—he failed to notify his supervisor and the EZ-Labor system, and he failed to arrange for another employee to cover his shifts; therefore, under the policy, both days were considered "no call no shows," subjecting Plaintiff to immediate termination.   Plaintiff's supervisor, Kelly Mullins, met with Plaintiff to discuss his absences.   Plaintiff told Ms. Mullins that he had a family emergency in Miami and did

not notify his supervisor or the EZ-Labor system because he did not know the telephone numbers.  Relying on this explanation,[16]  Mullins decided not to terminate Plaintiff and instead considered the absences unexcused.  Thus, Mullins assessed him two occurrences for the two unexcused absences.  At this point, Plaintiff had accumulated 6.33 occurrences, again subjecting Plaintiff to termination under the policy.  However, because Mullins had decided not to terminate him, Plaintiff, for the second time, signed a Last Chance Agreement on August 21, 2008.

For the next three months, Plaintiff received no other disciplinary actions under the attendance policy.  Thus, on October 30, 2008, Defendant deleted .5 of an occurrence from his attendance record pursuant to the policy's redemption provision.  At that time, Plaintiff had accumulated 5.83 occurrences.

Plaintiff received his final occurrence under the attendance policy in 2009, for absences on January 4, 5, 8, and 9.  On January 3, Plaintiff notified his supervisor that he had to leave work early due to a debilitating toothache.  Thereafter, pursuant to his dentist's orders, he missed four of his scheduled shifts.  Plaintiff notified his supervisor for each of the shifts he missed, but he did not call the EZ-Labor system, nor did he procure another employee to cover his shifts.  When Plaintiff returned to work on

---

[16] Plaintiff had, in fact, been arrested and was in jail those two days.

11

January 12, he brought an excuse from his dentist; thus, he received only one occurrence for the all of the unexcused absences.   Thereafter, Plaintiff had accumulated 6.83 occurrences.   Having accumulated more than six occurrences, Defendant terminated Plaintiff on January 23, 2009, for violating the attendance policy.

Martin Highsmith

Martin Highsmith, a white male, was also employed as a gluer operator in Defendant's facility in Perry, Georgia, and was subject to the same attendance policy as Plaintiff.  Like Plaintiff, Highsmith had a history of attendance violations.  By October 30, 2008, Highsmith had accumulated 3.83 occurrences and received a verbal warning. Less than a month later, by November 10, 2008, Highsmith had accumulated 4.5 occurrences and received a written warning.  On November 13, 2008, Highsmith had accumulated another .5 of an occurrence for leaving his shift early, and he was required to sign a Last Chance Agreement because he had accumulated 5 occurrences.  Later, however, that .5 of an occurrence was removed from his record because it was determined that Highsmith had a medical emergency and was required to leave early. On January 9, 2009, Highsmith accumulated .5 of an occurrence for clocking out early. On April 15, 2009, Highsmith was terminated for violation of Defendant's cell phone

policy.  At the time of his termination, Highsmith had accumulated 5 occurrences under the attendance policy.

From February 27, 2007, to July 27, 2010, Defendant terminated ten employees for attendance policy violations.  Of those ten employees, six were Caucasian and four were African American.

## DISCUSSION

Plaintiff claims Defendant terminated his employment because of his race in violation of 42 U.S.C. § 1981.  "In the employment context, § 1981 . . . claims require the same elements of proof and involve the same analytical framework as Title VII claims."[17]  Thus, to prevail on his claim, Plaintiff must prove that Defendant intentionally discriminated against him based on his race.[18]  Where, as here, a plaintiff attempts to prove discriminatory intent by circumstantial evidence, the court uses the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*.[19]  Under this framework, a plaintiff must first establish a prima facie case, or "facts adequate to permit an inference of discrimination."[20]  If the plaintiff does so, the burden then shifts

---

[17] *Bush v. Houston Cnty. Comm'n*, 414 F. App'x 264, 266 (11th Cir. 2011).
[18] *See, e.g., Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).
[19] 411 U.S. 792 (1973).
[20] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

13

to the employer to articulate some legitimate, nondiscriminatory reason for its action.[21]
If the employer meets this burden, the plaintiff then has an opportunity to show that the
employer's proffered reasons for the adverse employment action were merely pretext
for discrimination.[22]

**Prima Facie Case**

To establish a prima facie case of discriminatory discharge, Plaintiff must
produce circumstantial evidence showing that he (1) is a member of a protected class;
(2) he was qualified for the position; (3) suffered an adverse employment action; and (4)
was treated less favorably than a similarly situated individual outside his protected
class or was replaced by a person outside of his protected class.[23]  In this case, Plaintiff
fails to establish his prima facie case of discriminatory discharge because he cannot
point to a similarly situated comparator who was treated more favorably.[24]

"When a plaintiff alleges discriminatory discipline, to determine whether
employees are similarly situated, [the court must] evaluate whether the employees are
involved in or accused of the same or similar conduct and are disciplined in different

---

[21] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).
[22] *Id.* at 253.
[23] *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).
[24] Plaintiff does not contend he can satisfy his prima facie case by showing he was replaced by someone outside his protected class.

ways."[25]  A proper comparator is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff "in all relevant respects."[26]  If the comparator is not similarly situated in all relevant respects, "the different application of workplace rules does not constitute illegal discrimination."[27]

In determining whether a comparator is similarly situated to the plaintiff, the Eleventh Circuit has stated that "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies."[28]  However, "the quantity and quality of the comparator's misconduct must be nearly identical [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."[29]  "The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."[30]

Having read the entire record in this case, there is only one potential comparator Plaintiff can argue engaged in similar misconduct but received more favorable treatment—Martin Highsmith.  The Court finds, however, that Highsmith is not a

---

[25] *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted).

[26] *Holyfield*, 115 F.3d at 1562.

[27] *Lanthem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999).

[28] *Id.*

[29] *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Burke-Fowler*, 447 F.3d at 1323.

[30] *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1281 (11th Cir. 2008).

similarly situated individual who engaged in nearly identical misconduct to Plaintiff's. Plaintiff was terminated pursuant to Defendant's attendance policy as a result of his accumulation of six occurrences. Highsmith did not accumulate six occurrences. At the time of Highsmith's termination for cell phone use, he had accumulated only five occurrences. Highsmith was subjected to the same attendance policy as Plaintiff, and like Plaintiff, he was progressively disciplined in accordance with the policy. In his last year of employment, Highsmith received a verbal warning upon the accumulation of three occurrences, a written warning upon the accumulation of four occurrences, and a last chance agreement upon the accumulation of five occurrences. Unlike Plaintiff, Highsmith did not accumulate six occurrences and thus was not terminated for violation of the attendance policy. Highsmith and Plaintiff are not proper comparators for purposes of Title VII analysis; therefore, Plaintiff cannot establish his prima facie case of discrimination, and Defendant is entitled to summary judgment.

**Pretext**

Even if Plaintiff had established his prima facie case of discrimination, Defendant is still entitled to summary judgment because Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason for termination is merely pretext for race discrimination. Defendant's legitimate reason for termination–Plaintiff's accumulation

16

of six occurrences under its attendance policy–is certainly one "that might motivate a reasonable employer."[31]   Therefore, Defendant has satisfied its "exceedingly light" burden of producing a legitimate, non-discriminatory reason for Plaintiff's termination.[32]

Because Defendant has met its burden, Plaintiff must present sufficient evidence to create a genuine issue of material fact that Defendant's proffered legitimate reason for termination is merely pretext for race discrimination.   To establish pretext, a "plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this <u>either</u> directly by persuading the court that a discriminatory reason more likely motivated the employer <u>or</u> indirectly by showing that the employer's proffered explanation is unworthy of credence."[33]  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its

---

[31] *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

[32] *See Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 769-770 (11th Cir. 2005) (noting that employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions).

[33] *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (emphasis added) (quotations and citation omitted).

actions."[34]   Evidence establishing pretext may include the same evidence initially offered to establish the prima facie case of discrimination.[35]

Plaintiff shows neither that Defendant's proffered reason for termination is unworthy of credence nor that a discriminatory reason motivated his termination.  The record reveals no "weaknesses, implausibilities, inconsistencies, or contradictions" in Defendant's rationale for Plaintiff's termination,[36] and Plaintiff fails to establish that any discriminatory animus motivated Defendant's decision to terminate him.   Plaintiff's termination was the result of his repeated attendance violations.  Indeed, Plaintiff was subject to termination pursuant to the policy <u>twice</u> before Defendant ultimately terminated him.  While Plaintiff may have felt that his termination was unfair, as long as the action was not for a prohibited discriminatory reason, this Court does not sit as a "super-personnel department," and it does not review the wisdom of an employer's business decisions, no matter how mistaken or unfair they may seem.[37]   Without a similarly situated comparator or any other sufficient evidence to support an inference of intentional discrimination, Plaintiff has failed to establish his claim of racial discrimination, and Defendant is entitled to judgment as a matter of law.

---

[34] *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotations and citation omitted).
[35] *Wilson v. B.E. Aerospace*, 376 F.3d 1079, 1088 (11th Cir. 2004).
[36] *See Holland v. Gee*, 677 F.3d 1047, 1055-56 (11th Cir. 2012).
[37] *See Alvarez v. Royal Atlantic Dev., Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010).

18

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Extension of Time [Doc. 34]

is **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 27] is **GRANTED**.


**SO ORDERED,** this 4th day of November, 2014.


<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH